IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| CHRISTOPHER COLEMAN, #2029300 | § | |
| VS. | § | CIVIL ACTION NO. 6:21cv403 |
| CHRISTOPHER A. HOLMAN | § | |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Christopher Coleman, a prisoner currently confined in the Beto Unit of the Texas prison system, proceeding *pro se* and *in forma pauperis*, filed this civil rights lawsuit pursuant to 42 U.S.C. § 1983. Plaintiff is suing Correctional Officer Christopher A. Holman for excessive use of force. Defendant Holman filed a motion for summary judgment limited to the issue of exhaustion of administrative remedies. (Dkt. #11). Plaintiff filed a response in opposition. (Dkt. #13). Defendant filed a reply (Dkt. #15) and a supplemental reply (Dkt. #17). Plaintiff filed sur-replies (Dkt. ##19—22). The motion for summary judgment limited to the issue of exhaustion of administrative remedies, the response, and the replies were referred for findings of fact, conclusions of law, and recommendations for the disposition of the case.

For reasons hereinafter explained, the Court recommends that Defendant's motion for summary judgment limited to the issue of exhaustion of administrative remedies be denied, without prejudice, subject to reconsideration.

1

Plaintiff's Factual Allegations

Plaintiff filed the present lawsuit on October 8, 2021.[1] Plaintiff's live pleading is his Original Complaint. (Dkt. #1). Plaintiff is bringing an Eighth Amendment excessive use of force claim against Defendant Holman. Defendant Holman is sued in his individual capacity only.

Plaintiff states that Defendant Holman escorted him to X-wing on the Beto Unit on May 2, 2020. He contends that while he was in hand restraints, the defendant assaulted him by grabbing him by the neck, choking him, and kneeing his leg, breaking his femur in four places. Plaintiff seeks compensatory and punitive damages

Defendant's Motion for Summary Judgment

Defendant Holman filed a motion for summary judgment based on Plaintiff's alleged failure to exhaust his administrative remedies (Dkt. #11). More specifically, Defendant argues that Plaintiff failed to exhaust his administrative remedies prior to filing suit. To his motion for summary judgment, Defendant Holman attached the following:

(1) Plaintiff's grievance records for the time period of March 1, 2020, to July 31, 2020 (Bates Nos. 001-010), with a business records affidavit.

(2) Plaintiff's grievance records for the time period of August 1, 2020, to November 33, 2020 (Bates Nos. 011-022), with a business records affidavit.

---

[1] The Court received Plaintiff's original complaint on October 14, 2021. (Dkt. #1). Plaintiff's original complaint is dated October 8, 2021, indicating that he delivered his complaint to prison officials on October 8, 2021. A *pro se* prisoner's complaint is deemed to be filed on the date that the prisoner submits the pleading to prison authorities to be mailed. *Houston v. Lack*, 487 U.S. 266, 273 (1988); *see also Spotville v. Cain,* 149 F.3d 374, 376 (5th Cir. 1998) (per curiam) (holding that a *pro se* prisoner's § 1983 complaint is filed as soon as the pleadings have been deposited into the prison mail system).

(3) The relevant portion of TDCJ's Offender Orientation Handbook. (Dkt. #11-2—4).

Defendant Holman also filed a reply and supplemental reply to Plaintiff's response. To his supplemental reply, Defendant attached Plaintiff's TDCJ Unit History and Housing Assignment Records for the time period of April 1, 2020, to July 1, 2022 (Bates No. 034-036), with a business records affidavit. (Dkt. #17-1).

Defendant's legal arguments in conjunction with the facts set forth in the documents attached to his summary judgment motion will be fully examined in the Discussion and Analysis section of this Report and Recommendation.

## Plaintiff's Response

Plaintiff filed a response (Dkt. #13) to the motion for summary judgment on July 22, 2022. He argues that he did exhaust his administrative remedies, but his Step 2 grievance was intercepted by Grievance Investigator Gena Harris at the Beto Unit. He claims that he was prevented from exhausting his administrative remedies because Ms. Harris destroyed his Step 2 grievance and threw it away.

He submitted various sur-replies (Dkt. ##19—22) to Defendant's replies. His legal arguments in light of the summary judgment evidence submitted to the Court will be fully examined in the Discussion and Analysis section of this Report and Recommendation.

## Standard of Review

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party for summary judgment has the burden of proving the lack of a

genuine dispute as to all the material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Galindo v. Precision Am. Corp.,* 754 F.2d 1212, 1221-23 (5th Cir. 1985).

In deciding a motion for summary judgment, the Court must make a threshold inquiry in determining whether there is a need for a trial. "In other words, whether there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." 477 U.S. at 247-48.

If the movant satisfies its initial burden of demonstrating the absence of a material fact dispute, then the non-movant must identify specific evidence in the summary judgment record demonstrating that there is a material fact dispute concerning the essential elements of its case for which it will bear the burden of proof at trial. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996). The non-movant cannot survive a motion for summary judgment by resting on the allegations in his pleadings. *Isquith v. Middle S. Util., Inc.,* 847 F.2d 186, 199 (5th Cir.), *cert. denied*, 488 U.S. 926 (1988). Rather, he must direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324.

To carry this burden, the non-movant must present evidence sufficient to support a resolution of the factual disputes in his favor. *Anderson*, 477 U.S. at 257. The non-movant must submit competent summary judgment evidence sufficient to defeat a properly supported motion for summary judgment. *See, e.g., Burleson v. Texas Dep't of Criminal Justice*, 393 F.3d 577, 589-

90 (5th Cir. 2004); *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 755 (5th Cir. 2001). All reasonable inferences are drawn in favor of the non-moving party, but the non-moving party "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only "a scintilla of evidence."" *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007); *Miller v. Graham*, 447 F. App'x 549, 551 (5th Cir. 2011); *Chacon v. York*, 434 F. App'x 330, 332 (5th Cir. 2011).

"Because summary judgment is a final adjudication on the merits, courts must employ this device cautiously." *Hulsey v. State of Texas*, 929 F.2d 168, 170 (5th Cir. 1991) (citation omitted). In prisoner *pro se* cases, courts must be careful to "guard against premature truncation of legitimate lawsuits merely because of unskilled presentations." *Murrell v. Bennett*, 615 F.2d 306, 311 (5th Cir. 1980).

Discussion and Analysis

Defendant Holman acknowledges that Plaintiff filed a Step 1 grievance regarding the May 2, 2020 use of force. (Dkt. #11, p. 4). Defendant, however, asserts that Plaintiff did not file a Step 2 grievance regarding the use of force; and thus, Plaintiff did not exhaust his administrative remedies before filing suit.

Federal law governing the exhaustion of administrative remedies is 42 U.S.C. § 1997e. In 1996, Congress enacted the Prison Litigation Reform Act, which mandated that no action shall be brought by a prisoner "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). After reviewing the provision, the Supreme Court unanimously concluded that inmates must exhaust their administrative remedies before proceeding to federal court. *Booth v. Churner*, 532 U.S. 731 (2001); *see also Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004) (42

5

U.S.C. § 1997e(a) requires prisoners to exhaust administrative remedies before filing a civil rights action). Exhaustion is mandatory and is required for all actions brought by prisoners. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). Exhaustion is intended to give correctional officials an opportunity to address complaints internally before initiation of a federal suit. *Id.* at 525.

A prisoner must satisfy the requirements of "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 83 (2006). The Supreme Court reiterated that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). It was added, however, that the "failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specifically plead or demonstrate exhaustion in their complaints." *Id.* at 216.

Following the decision in *Jones*, the Fifth Circuit provided the following instructions concerning how the exhaustion issue should be handled:

> As a final matter, we now provide a brief summary of how district courts should approach exhaustion questions under the PLRA. When the defendant raises exhaustion as an affirmative defense, the judge should usually resolve disputes concerning exhaustion prior to allowing the case to proceed on the merits. If the plaintiff survives summary judgment on exhaustion, the judge may resolve disputed facts concerning exhaustion, holding an evidentiary hearing if necessary. . . . On appeal, when the judge below has served as factfinder, we will review rulings on exhaustion *de novo*, . . . but will accept the judge's factual conclusions unless they are clearly erroneous.

*Dillon v. Rogers*, 596 F.3d 260, 272-73 (5th Cir. 2010) (citations omitted). The Fifth Circuit observed that it has taken a strict approach and has found that "substantial compliance" does not satisfy exhaustion. *Id.* at 268.

It is clear, however, that failure to exhaust is an affirmative defense on which Defendant must bear the burden of proof. *Jones*, 549 U.S. at 216; *see Abbott v. Babin*, 587 F. App'x 116, 118

6

(5th Cir. 2014) ("When defendants seek to avail themselves of the affirmative defense of failure to exhaust, they bear the burden of showing that administrative remedies were not exhausted"); *see also Morgan v. Texas Dep't of Criminal Justice McConnell Unit*, 537 F. App'x 502, 508 (5th Cir. 2013) (same); *Dillon v. Rogers*, 596 F.3d at 266 (noting that prison officials "must establish beyond peradventure all of the essential elements of the defense of exhaustion").

The summary judgment evidence shows that Plaintiff filed a Step 1 grievance, Grievance No. 2020121292, on May 14, 2020, complaining about the May 2, 2020 use of force with Defendant Holman. The grievance reflects that Plaintiff was at Hospital Galveston at the time the grievance was filed. (Dkt. #11-2, p. 7-8).

The grievance response is dated June 19, 2020, and signed by Raleigh Breeden. (Dkt. #11-2, p. 8). The response states:

> Your allegations have been reviewed. The unit level investigation into the use of force on 05/02/20 was forwarded to the Office of the Inspector General (OIG) for further review. OIG felt that there was sufficient evidence to open an investigation through their office and they will manage this investigation from this point on.

(*Id*.). This copy of the Step 1 does not reflect when the grievance was returned to Plaintiff. (*Id*.). This is also true of the copy of the Step 1 found in Dkt. #11-3, p. 5. The Step 1 grievance also fails to state at what unit the grievance response was sent to Plaintiff. The copy of the Step 1 Grievance at Dkt. #11-3, p. 5 does contain the notation "Pencil/Accept as Original." Defendant does not provide an explanation to what the notation refers. He further does not provide an affidavit from the TDCJ Offender Grievance Records Office regarding the existence of a Step 2 grievance for Grievance No. 2020121292, or when or where the Step 1 grievance response was returned to Plaintiff.

7

Plaintiff's July 6, 2022 letter response to Defendant's summary judgment motion states that Plaintiff wrote a Step 2 grievance and attached it to his Step 1 grievance and submitted it. He contends that his grievance must have been stolen and tampered with by Grievance Investigator Gena Harris, as she is the only one that picks up grievances and she knew about his problem with Defendant Holman and his broken leg. (Dkt. #12, p. 1). In his July 20, 2022, response (Dkt. #13, p. 2), Plaintiff maintains that he was not satisfied with the response to the Step 1 grievance and that he filed a Step 2 grievance. Plaintiff claims surprise to learn that his Step 2 grievance is not in his file or in the computer and again suggests that Ms. Harris is responsible for the disappearance of his Step 2 grievance.

In his reply (Dkt. #15, pp. 4-5), Defendant Holman reiterates that exhaustion is mandatory, and that Plaintiff has failed to show that the grievance process was unavailable to him. In his supplemental reply (Dkt. #17), Defendant provides a copy of Plaintiff's Unit History and Housing Assignment Record for the relevant time period to suggest that Plaintiff's Step 1 grievance must have been returned to him while Plaintiff was housed at the Connally Unit. (Dkt. #17-1, p. 3-4).

Defendant is correct that the grievance response was signed on June 19, 2020 (Dkt. #11-2, p. 8), and that as of that day—June 19, 2020, Plaintiff was housed at the Connally Unit. (Dkt. #17-1, p. 4). However, there is no summary judgment evidence as to what day that Plaintiff actually received the Step 1 grievance response and at what unit he was housed when he received the response, as the information is blank on all copies of the grievance response provided to the Court.

The TDCJ Offender Orientation Handbook provides that if an inmate is:

> . . . not satisfied with the Step 1 response, you may appeal the Step 1 decision by filing a Step 2 (I-128). You have 15 days from the "Date returned to the Offender"

> noted in the "OFFICE USE ONY" box on the front of the grievance form to submit the Step 2 to the grievance investigator on the unit.

(Dkt. #11-4, p. 11). Defendant assumes that the date the grievance response is signed is the same date that the grievance response was returned to Plaintiff; however, Defendant provides no summary judgment evidence that the two dates are synonymous. Furthermore, the Offender Orientation Handbook clearly states that it is the date stated in the "Date returned to the Offender" blank that matters as to timely filing of a Step 2 grievance.

Plaintiff's Unit History and Housing Assignment Record reflects that he transferred from the Connally Unit to the Beto Unit on July 22, 2020. (Dkt. #17-1, p. 3). It is conceivable that depending on when Plaintiff received his Step 1 grievance response that he could have filed his Step 2 timely at the Beto Unit. In fact, in Plaintiff's September 9, 2022, response to Defendant's summary judgment motion (Dkt. #19), Plaintiff asserts that he was transferred between units several times and that the Step 1 grievance response was returned to him while he was at the Beto Unit.

Prison officials "must establish beyond peradventure all of the essential elements of the defense of exhaustion." *Dillon*, 596 F.3d at 266. Defendant fails to prove with summary judgment evidence when Plaintiff received the Step 1 grievance response and at what unit he was housed at the time the response was returned to him. Plaintiff asserts that he was at the Beto Unit when he filed his Step 2 grievance, and that Grievance Investigator Harris intercepted his grievance and effectively prevented him from exhausting his administrative remedies.

The Fifth Circuit has recognized that the exhaustion requirement may, in rare circumstances, be excused where dismissal would be inefficient or would not further the purposes

of the Prison Litigation Reform Act. *Underwood v. Wilson*, 151 F.3d 292, 296 (5th Cir. 1998) (per curiam) (citing *McCarthy v. Madigan*, 503 U.S. 140, 146–49 (1992)). For example, exhaustion may be excused where irregularities in the prison administrative system itself prohibited the plaintiff from doing so. *Id.*; accord *Shah v. Quinlin*, 901 F.2d 1241, 1244 (5th Cir. 1990).

An administrative remedy is not available where prison officials ignore or interfere with the prisoner's pursuit of relief. *Underwood*, 151 F.3d at 296; accord *Holloway v. Gunnell*, 685 F.2d 150, 154 (5th Cir. 1982) (exhaustion requirement may be excused where administrative remedies are inadequate because prison officials ignore or interfere with a prisoner's pursuit of relief). In deciding *Ross v. Blake*, 578 U.S. 632 (2016), the Supreme Court held that a remedy may be unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 644. Plaintiff alleges sufficient facts that Ms. Harris thwarted his attempts to exhaust his administrative remedies.

Examining the summary judgment evidence in the light most favorable to the non-movant, issues of fact regarding when and where Plaintiff was housed at the time the Step 1 grievance response was returned to him exist and cannot be resolved on the record presented to the Court. Accordingly, the alleged failure to exhaust administrative remedies issue should be denied, without prejudice, subject to reconsideration.

Recommendation

It is recommended that the Defendant Holman's motion for summary judgment limited to the issue of exhaustion of administrative remedies (Dkt. #11) be denied, without prejudice, subject to reconsideration.

Within fourteen (14) days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report.

A party's failure to file written objections to the findings, conclusions, and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass*, 79 F.3d at 1430 (*en banc*), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**So ORDERED and SIGNED this 6th day of February, 2023.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE